UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVIX GOLF, INC., Plaintiff, v. JEFFREY P. MOHR; et al., Defendants. | Civil No. 05CV1488 JAH (CAB) **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendants' Motion for Summary Judgment on Plaintiff's claims for conversion, conspiracy to commit conversion, breach of fiduciary duty, misappropriation of trade secrets, and common law and state law unfair competition. For the reasons below, Defendants' Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

The following facts are not in dispute. Since August of 1999, Todd Jones has used the mark "Divix" in connection with its divot tool, a device used by golfers to repair ball marks on the putting surface during play. Doc. No. 1 at 5. On or about August 2000, defendant Jeffrey P. Mohr, ("Mohr"), approached Todd Jones about marketing the Divix device. Around that time the two parties reached an agreement for Mohr to market the device, which Mohr did for two years. Doc. No. 126 at 3. In 2002 Jones formed Divix Golf, Inc. ("Divix"), a company that sells the divix[1] device and other golf related products. Id. Later that year Mohr became President and CEO of Divix. At some point the relationship between the two parties deteriorated and in May 2004, Divix terminated Mohr.

[1]To avoid confusion, the court will use divix to discuss the device and Divix when referring to the company that sells the divix device.

In July 2004, Mohr filed a lawsuit against Divix in the Superior Court of California for wages allegedly owed Mohr for his work at Divix. Divix filed a cross-complaint on August 23, 2004 which alleged Mohr did not properly account for company funds received from sales of the divix device and that Mohr removed and disclosed Divix's proprietary information in violation of his non-disclosure agreement and fiduciary obligations. Id. In September 2004, Mohr formed Remedy Golf, Inc., ("Remedy") to manufacture and sell his own "switchblade style divot tools." Doc. No. 126 at 4. Defendants Diana Sarcoz ("Sarcoz") and Felix Hoang ("Hoang"), former employees of Divix, began working for Remedy in October 2004. Id. Divix filed the instant lawsuit against Mohr, Remedy, Bandwagon, Inc., Sarcoz, and Hoang [hereinafter "Defendants"] on July 26, 2005, alleging patent infringement, conversion and conspiracy to commit conversion, trademark and trade dress infringement, breach of fiduciary duty, misappropriation of trade secrets, and state and common law unfair competition. The parties settled their state court action in April 2006 and the state court dismissed all claims with prejudice on September 5, 2006.

The remaining facts are disputed by the parties. Plaintiff asserts that in March 2004, Mohr, acting in his fiduciary capacity, placed an order with Bandwagon, Inc. ("Bandwagon"), for certain proprietary molds and tooling to manufacture Divix products. Doc. No. 1 at 4. Plaintiff further alleges that subsequent to Mohr's termination from Divix, Bandwagon sent the molds and tooling to Mohr for his use, rather than to Divix. According to plaintiff, Remedy later sold products made from those converted molds and tooling. Doc. No. 1 at 4. Lastly, plaintiff contends Mohr and Remedy successfully induced Sarcoz and Hoang to disclose Divix's proprietary information to them in violation of their non-disclosure agreements. Doc. No. 126 at 4.

Defendants state that although Mohr ordered molds and tooling from Bandwagon on behalf of Divix, he paid for the products with his own money. Doc. 143-6 at 4. After Divix refused to reimburse him for that purchase, the molds and tooling were destroyed. Id. Defendants further state that during Mohr's employment as President and CEO of Divix, he had access to all of Divix's proprietary information and thus could not have received any

additional proprietary information from Sarcoz and Hoang. Doc. 143-2 at 3-4.

## PROCEDURAL BACKGROUND

Defendant Mohr filed a complaint against Divix in the Superior Court of California in July 2004. Divix filed a cross-claim against Mohr on August 23, 2004 for, *inter alia*, fraud, breach of contract and breach of fiduciary duty. Divix filed the instant complaint against Defendants on July 26, 2005 in the United States District Court for the Southern District of California. On April 10, 2006, the Superior Court of California approved an agreement between the parties that settled all of the state court claims. Pursuant to that settlement agreement, all claims and cross claims asserted in the state court action were dismissed with prejudice on September 5, 2006.

On May 21, 2008, Defendants filed a Motion In Limine with this Court to preclude Divix from introducing any evidence concerning the state law claims alleged in its federal complaint. In their motion, Defendants argued that res judicata and collateral estoppel barred plaintiff from relitigating the claims that were already adjudicated and dismissed in the September 5, 2006 state court judgment. Divix filed its Response in Opposition to Defendants' Motion in Limine on June 4, 2008, arguing the res judicata and collateral estoppel arguments raised in Defendants' motion should have been raised in a summary judgment motion, as opposed to a motion in limine. Because the deadline for filing pretrial motions, including motions for summary judgment, expired on October 26, 2007, Divix argued the res judicata and collateral estoppel arguments were waived. Doc. 133 at 4. Divix further claimed that although Defendants' res judicata and collateral estoppel arguments were waived, those arguments did not bar any of its pending claims.

The Court held oral argument on Defendants' Motion In Limine on July 25, 2008. After argument, the Court abstained from ruling on the motion in limine and directed Defendants to file a motion for summary judgment on the res judicata and collateral estoppel issues. On August 6, 2008, Defendants filed a motion for summary judgment of Divix's state law claims

for conversion, conspiracy to commit conversion, breach of fiduciary duty, misappropriation of trade secrets, and common law and state law unfair competition. Divix filed its opposition on August 20, 2008 and Defendants replied on August 22, 2008.

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### 2. Res Judicata

Res judicata prohibits "relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." Richard B. Levine, Inc. V. Higashi, 131

Cal.App.4th 566, 573 (2005)(citing Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 896-97 (2002)).[2] "[T]he doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed." Monterey Plaza Hotel Limited Partnership v. Local 483 of the Hotel Employees and Restaurant Employees Union, AFL-CIO, 215 F.3d 923, 927 ( 9th Cir. 2000). "A federal court must give a state court judgment the same preclusive effect that it would be given under the law of the state in which judgment was rendered."[3] Santos v. Todd Pacific Shipyards Corp., 585 F. Supp. 482, 486 (C.D. Cal. 1984)(citing Migra v. Warren City School Dist. Bd. Of Educ., 104 S.Ct 892, 896 (1984). California follows Pomeroy's primary right theory which states that a cause of action consists of "(1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty. *Thus, two actions constitute a single cause of action if they both affect the same primary right.*" Richard B. Levine, Inc. V. Higashi, 131 Cal.App.4th 566, 575 (2005)(citing Gamble v. General Foods Corp., 229 Cal.App.3d 893, 898 (1991)). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Santos, 585 F. Supp. at 486 (citing Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174-75 (1983)." Moreover, "[i]f the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." Eichman, 147 Cal.App.3d at 1175. "Even when several defendants cause a single injury to plaintiff, '[t]he primary right is determinative. So, if there is only one primary right violated there is only one cause of action, even though there may be two or more wrongdoers, each doing a wrongful act and each individually liable

---

[2]Although Defendants initially assert they are moving for summary judgment based on the doctrines of collateral estoppel and res judicata, they neglect to include any collateral estoppel arguments in their briefs. Because the Court finds that res judicata is the appropriate mechanism for analyzing these claims, the collateral estoppel issue will not be discussed.

[3]A dismissal with prejudice following a settlement constitutes a final judgment for res judicata analysis. Deleon v. Verizon Wireless, 170 Cal.App.4th 519, 529 (2008).

for it.'" Richard B. Levine, Inc., 131 Cal.App.4th at 575(citing 4 Witkin, Cal. Procedure (4 th ed. 1997) Pleading, §55, p.111).

**3. Arguments**

Defendants contend the September 5, 2006 judgment entered by the Superior Court of California prevents this court from adjudicating all claims that were raised, or could have been raised, in the state court complaint. According to Defendants, the state law claims in this case concern the same primary right as the claims previously asserted and dismissed in the state court action, namely Divix's right to maintain its proprietary and confidential information. Doc. 143-2 at 7. In its state court claim for breach of contract, Divix alleged Mohr violated his non-disclosure agreement with Divix when he " removed certain proprietary documents to which the [non-disclosure agreement] applies from the Divix premises without permission from Divix." Doc. 143-5 ¶ 28. Another claim alleged "Mohr breached his fiduciary duty to Divix by violating the terms of the [non-disclosure agreement] in that he disclosed proprietary information to third parties without first obtaining Divix' disclosure authorization." Id. at ¶32. Defendants argue that notwithstanding the additional defendants named in the federal complaint that were not parties to the state court action, res judicata bars the pending state law claims against all defendants because they are each accused of violating the same primary right that Divix previously litigated in state court. Doc. 143-2 at 7-9.

In response, Divix argues that res judicata does not apply because each of its state law claims in this proceeding asserts wrongs that occurred after Divix commenced its state court litigation. Divix asserts that Remedy markets certain products made from Divix's proprietary molds and tooling that were improperly sent to Mohr by Bandwagon. Doc. 1 ¶4. According to Divix, res judicata does not apply to its pending state law claims because they were not aware of Bandwagon's intent to send the products to Mohr until August 31, 2004, one week after Divix filed its state court complaint. Doc. 145 at 9. Similarly, Mohr and Remedy did not improperly use Divix's molding until Mohr formed Remedy in September 2004. Id. Also, the

allegations against Sarcoz and Hoang which state they disclosed Divix's proprietary information to Remedy could not have occurred until Remedy's formation in September 2004. Doc. 145 at 6. Because all of the aforementioned conduct occurred after Divix commenced its state court action, Divix argues res judicata does not apply. Divix further argues that res judicata is inapplicable because the state law claims brought in the federal action assert specific acts of wrongdoing while the state court claims regarding the misuse of proprietary information only contain vague allegations. Doc. 145 at 5-6. Finally, Divix contends res judicata does not bar its claims against Defendants Bandwagon, Remedy, Sarcoz, and Hoang because they were not parties to the state court action. Id. at 4.

**4. Analysis**

i. Divix's State Court Action Against Mohr

Divix's state court action against Mohr concerned three primary rights: 1) its right to receive monies owed from the sale of its products[4]; 2) its right to an honest fiduciary; and 3) its right to control the use of its proprietary information.[5]

In its state court complaint, Divix brought breach of contract, breach of fiduciary and fraud claims based on an allegation that Mohr acted against the company's interests when he retained proceeds from internet sales of the divix device instead of disbursing them to the company. Divix's state court complaint also included additional breach of fiduciary and breach of contract claims based on Mohr's alleged improper disclosure and removal of Divix's proprietary information, respectively. Each of the aforementioned claims concerned Divix's right to an honest fiduciary. The second breach of fiduciary and breach of contract claims also concerned another primary right, Divix's right to control the use of its proprietary information.

---

[4]Divix did not include any allegations with respect to this right in the instant complaint.

[5]Although defendant claims the primary right allegedly violated in both the state and federal cases is Divix's right to maintain its proprietary information, the Court finds the primary right more aptly labeled as Divix's right to control the use of its proprietary information.

Unlike the other claims asserted in the state court action, these latter claims did not contain specifics about the content of the information removed and disclosed by Mohr. However, because the state court action concerned Mohr's conduct while employed as President and CEO of Divix, it necessarily follows that the proprietary information at issue in these claims is information Mohr possessed prior to his termination from Divix. Consequently, these claims asserted a violation of Divix's right to control the use of its proprietary information only with respect to proprietary information in Mohr's possession before his departure from Divix ["pre-departure information"].

ii. Divix's Claims in the Instant Case

a. Conversion, Conspiracy to Commit Conversion and Breach of Fiduciary Duty Claims

The conversion, conspiracy to commit conversion, and breach of fiduciary claims asserted in the instant complaint contain allegations of another instance where Mohr violated Divix's right to control the use of its proprietary information and its right to have an honest fiduciary. The first substantive allegation in the conversion and conspiracy to commit conversion claim is: "Defendant MOHR was president of Plaintiff from April 2002 to May of 2004, and as such owed Plaintiff a fiduciary duty not to act against the interests of Plaintiff." Doc. 1 at ¶16. The allegations that follow discuss the order Mohr placed with Bandwagon, on behalf of Divix, for proprietary molding and tools and the subsequent delivery of those products to Mohr, instead of Divix. Id. at ¶16-22. The breach of fiduciary claim states Mohr violated his fiduciary obligations by performing the aforementioned conduct. Id. at ¶34.

b. The Applicability of Res Judicata to the Conversion, Conspiracy to Commit Conversion, and Breach of Fiduciary Duty Claims

Pursuant to a settlement agreement between the parties, the Superior Court of California entered a judgment that dismissed all claims in the state court action on September 5, 2006. That judgment forecloses any successive litigation by Divix on the claims brought in the state court action, or claims which Divix could have brought for violations of the primary rights at issue in the state court action. See Eichman, 147 Cal.App.3d at 1175 (emphasis added), ("[i]f the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised."). Res judicata also prevents Divix from asserting future claims based on events that happened after Divix filed its state court complaint, but prior to that court's entry of judgment in 2006, if those events concern the primary rights at issue in the state court action. See, e.g., Monterey Plaza Hotel Limited Partnership, 215 F.3d. at 927. ("[T]he doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed.").

Divix did not include the factual allegations underlying the conversion, conspiracy to commit conversion and breach of fiduciary claims in its state court complaint. However, those allegations concern the same primary rights at issue in the state court action to wit: Divix's right to control the use of its proprietary information and to have an honest fiduciary. As previously mentioned, the breach of contract and breach of fiduciary claims raised in the state court action concerned pre-departure information. According to the allegations in the instant complaint, Mohr disclosed Divix's proprietary information to Bandwagon on March 3, 2004, Id. at ¶16, two months before his termination from Divix. Accordingly, these allegations concern the pre-departure information at issue in the state court action and involve the same primary rights asserted therein. Although Divix now alleges conduct regarding the pre-departure information that took place after it filed the state court complaint, specifically Mohr's receipt of the proprietary molding and tools from Bandwagon and Remedy's creation of products based on that molding, the fact that Divix included this conduct in its 2005 federal complaint means that conduct occurred before the state court's entry of judgment in 2006 and Divix was obviously aware of it.

Although Divix is correct that res judicata did not require them to prognosticate future violations of other primary rights and raise them in its state court complaint, such prescience was not needed here as the same primary rights are involved. Under California law, "a continuing misappropriation claim [is] a single claim, which accrues when a party breaches the confidential relationship." Security People Inc. v. Medeco Security Locks, Inc., 59 F. Supp. 2d 1040, 1043 (N.D. Cal 1999). Consequently, Divix's claims based on Mohr's improper use of the pre-departure information accrued as soon as Mohr breached his non-disclosure agreement. This Court finds that Mohr's disclosure constituted one breach, and therefore one wrong, regardless of how often he disclosed that information. Id. Although plaintiff may not have known the extent or consequences of Mohr's disclosure at the time of the filing of its state court complaint, subsequently obtaining such knowledge does not constitute a breach of a different primary right by the defendant.

This Court also finds Divix's contention that the vague allegations averred in its state court complaint regarding Mohr's disclosure of proprietary information cannot prevent it from asserting specific instances of wrongdoing in this Court unavailing. That reasoning directly contradicts the res judicata principle. Res judicata encourages claimants to perform a thorough investigation prior to filing their complaint so that all claims arising out of the same primary right violation can be plead together. See, e.g., Eichman 147 Cal.App.3d at 1176 (Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining the facts). A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of res judicata. Id. Not only did Divix fail to investigate the extent of Mohr's alleged wrongdoing regarding the pre-departure information before filing its state court complaint, it also failed to amend its complaint to include this additional conduct when it became known or insure that the post-state complaint conduct was adequately addressed in the settlement of its state court claims. Under Monterey, Divix cannot get a second bite at the apple and relitigate that conduct here.

Because the Superior Court of California has already entered judgment on the cause of

action concerning Mohr's disclosure of the pre-departure information, Defendants' Motion for Summary Judgment is GRANTED with respect to Mohr on the conversion, conspiracy to commit conversion and breach of fiduciary claims.

Additionally, under California law a plaintiff may not reassert the same primary right violation for which judgment was previously entered against a different defendant. See Richard B. Levine, Inc., 131 Cal.App.4th at 575(citing 4 Witkin, Cal. Procedure (4 th ed. 1997) Pleading, §55, p.111). The allegations against Remedy and Bandwagon in the conversion and conspiracy to commit conversion claims involve conduct that relates to the same pre-departure information discussed above. Although Remedy, Bandwagon and Mohr are accused of committing different wrongs, each wrong asserted in the aforementioned claims implicates Divix's right to control the use of its proprietary information. As stated, Divix has already litigated a cause of action with respect to this primary right. Thus, summary judgment is GRANTED with respect to Remedy and Bandwagon on the conversion and conspiracy to commit conversion claims.[6]

c. Claims for Misappropriation of Trade Secrets and Common Law and State Law Unfair Competition

Divix's claim for misappropriation of trade secrets alleges Mohr and Remedy induced former Divix employees, Sarcoz and Hoang, to disclose Divix's proprietary customer lists, contact information, and artwork to them in violation of their non-disclosure agreements. Doc.

[6] This Court also finds the rationale in Sartor v. Superior Court of California on point. 136 Cal.App.3d 322, 326 (1982). In Sartor, the Court discussed an exception to California's res judicata privity requirement where the "liability of the defendant asserting the plea of res judicata is dependent upon or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff upon the same facts." Id. (citing Bernhard v. Bank of America, 19 Cal.2d 807, 812 (1942)). Examples of such derivative liability include "master and servant, principal and agent, and indemnitor and indemnitee." Id. Under the privity exception, the Court found that because a corporation could only act through its agents, plaintiffs were estopped from asserting claims against the corporation's agents that had already been brought against the corporation. Id. Likewise, this Court finds that because Remedy could only commit the alleged acts through its agent, Mohr, a finding that res judicata applies to the claims against Mohr necessitates the same finding with respect to Remedy.

145 at 6. The common law and state law unfair competition claim alleges that the conduct underlying the conversion, conspiracy to commit conversion, and misappropriation of trade secrets claims was performed for the purpose of gaining a competitive advantage over Divix. This Court does recognize that claims involving the disclosure of different information by other Divix employees or additional proprietary information obtained and improperly used by Mohr after his state court settlement with Divix may implicate a different primary right than the one previously litigated in Divix's state court case. See, e.g., Security People, Inc., 59 F. Supp. 2d at 1044 (noting that despite a previous settlement between the parties on plaintiff's misappropriation of trade secrets claim, res judicata may not apply to successive misappropriation claims based on new confidential information not covered by the settlement). However, Divix fails to set forth any specific facts to place these claims outside of the res judicata bar as required to defeat Defendants' Motion for Summary Judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 256 (the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial."). The mere allegations of wrongdoing contained in Divix's Complaint and Opposition to Defendants' Motion for Summary Judgment are not the type of "specific fact[s]" required to survive summary judgment. Id.; see also F.R.C.P. 56(e)(2).[7] As a result, Defendants' motion is GRANTED on plaintiff's misappropriation of trade secrets and common law and state law unfair competition claims.

## CONCLUSION AND ORDER

Based on the foregoing reasoning, IT IS HEREBY ORDERED that Defendants' Motion In Limine is DENIED AS MOOT (Doc. 126) and Defendants' Motion for Summary Judgment (Doc. 143) is GRANTED. Accordingly, the clerk of court shall enter judgment on plaintiff's

[7]Rule 56 (e)(2) provides that when a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its pleading; rather its response must - by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

claims for conversion, conspiracy to commit conversion, breach of fiduciary duty, misappropriation of trade secrets, and common law and state law unfair competition. The court will issue another order setting a trial date for plaintiff's patent infringement and trademark and trade dress infringement claims.

**IT IS SO ORDERED.**

DATED: March 30, 2009

JOHN A. HOUSTON
United States District Judge